# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARCIE A. ROGAN and JAMES N. RAISLEY, *Co-Administrators of the Estate of Kathleen Ann Rogan, Deceased*, | Civil Action No. 12 - 1375 |
| | District Judge Mark R. Hornak |
| | Chief Magistrate Judge Lisa Pupo Lenihan |
| Plaintiff, | |
| v. | ECF No. 10 |
| COUNTY OF LAWRENCE, PENNSYLVANIA, BRIAN COVERT, *Warden of the Lawrence County Correctional Facility*, JOHN DOE #1, *Lawrence County Correctional Facility Employee*, PRIME CARE MEDICAL, INC., JOHN DOE #2, *Physician Employee*, JOHN DOE #3, *Medical Specialist Employee of Prime Care Medical Inc.*, | |
| Defendants. | |

## REPORT AND RECOMMENDATION

**I.    RECOMMENDATION**

For the reasons that follow, it is respectfully recommended that the Partial Motion to Dismiss filed by Lawrence County and Warden Covert (ECF No. 10) be granted in part and denied without prejudice in part as follows:

(1)    Granted as to Plaintiffs' wrongful death (Count 7) and survival (Count 8) claims against Lawrence County and Warden Covert in his official capacity.

(2)    Granted as to all Counts against all Defendants to the extent Plaintiffs bring suit in their own right and also granted as to Plaintiff Raisley's wrongful death claim asserted on behalf of his minor child.

1

(3) Granted as to Plaintiffs' claims against Warden Covert (Counts 7 and 8) in his official capacity as being duplicative of the claims against Lawrence County.

(4) Granted as to Plaintiffs' state-created danger claim against John Doe #1 (Count 3) and Lawrence County (Count 4)

(5) Granted as to Plaintiffs' "special relationship" claim against John Doe #1 and Lawrence County (Count 5).

(6) Granted as to Plaintiffs' claim for punitive damages against Lawrence County and Warden Covert in his official capacity.

(7) Denied without prejudice as to Plaintiffs' remaining claims asserted against John Doe #1 (Counts 1, 7 and 8).

It is further recommended that Defendant Warden Covert be terminated from this action as there are no remaining Counts against him.

## II. REPORT

This matter arises from the suicide of Kathleen Ann Rogan (hereinafter referred to as the "Decedent"), shortly after being detained within the Lawrence County Correctional Facility in October 2010. Plaintiffs are the co-administrators of the Decedent's estate; Marcie A. Rogan, mother of the Decedent, and James N. Raisley, the father of one of the Decedent's minor children, Taylor Raisley. The Complaint alleges eight counts; five counts pursuant to 42 U.S.C. § 1983 and three under Pennsylvania state law. They are as follows: deliberate indifference in violation of the Fourteenth Amendment against John Doe #1 (Count 1) and against Lawrence County (Count 2); state created danger against John Doe #1 (Count 3) and against Lawrence County (Count 4); violation of the Fourteenth Amendment under a special relationship theory against Lawrence County and John Doe #1 (Count 5); medical malpractice against John Doe #2, John Doe #3 and PrimeCare Medical (Count 6); wrongful death against all Defendants (Count 7) and a survival action against all Defendants (Count 8). Currently pending before the Court is a

Partial Motion to Dismiss filed by the County Defendants. (ECF Nos. 10, 11). Plaintiffs have filed a response to the motion. (ECF Nos. 19, 20). It is now ripe for review.

**A. Plaintiffs' Allegations**

The following allegations are contained in the Complaint. On October 7, 2010, the Decedent was arrested for child endangerment in connection with the care of her daughter, Taylor Raisley. (ECF No. 1 at ¶ 25.) At the time of her arrest, the Decedent was under the influence of unlawful substances and emotionally unstable. Id. at ¶ 26. She had a history of previous suicide attempts, drug dependence and mental impairment. Id. She was placed in the Lawrence County Correctional Facility (hereinafter referred to as "LCCF") where she was given a mental health screening at intake and tested and scored a high risk for suicide. Id. at ¶¶ 27, 30(a)-(b). She responded to the question regarding suicide with "I will kill myself if I get a chance" and she responded to the question about having anything to look forward to in life as "No." Id. at ¶¶ 30(c)-(d). In addition, at the time she came to be in custody at the LCCF and during the duration of her stay, she bore a particular vulnerability to suicide because she had three visible and lengthy scars on her left arm from a suicide attempt with a razor blade made in June, 2010. Id. ¶¶ 28, 30(a). Because of these signs, it is alleged that Lawrence County, Warden Covert and John Doe #1 all had notice of the Decedent's vulnerability to suicide. Id. at ¶ 30.

As a result of her screening, the Decedent was placed in an isolation cell in a "suicide smock" for 24-hour suicide watch. Id. at ¶ 31. She was kept there for just over two days despite the fact that the customary duration of 24-hour suicide watch is a period of seven days. Id. ¶¶ 32-33. On or about October 10, 2010, LCCF employees reported that John Doe #2 and John Doe #3, namely PrimeCare Medical's physician and mental health specialist, evaluated the Decedent and cleared her to be placed on a 30-minute intermittent suicide watch. Id. at ¶ 35. As such, she

was subsequently removed from 24-hour suicide watch. Id. at ¶ 34. Her new cell contained a bed sheet and an upper bunk. Id. at ¶ 51. Sadly, sometime during the evening of October 10-11, 2010, the Decedent took the sheet from her bed, knotted a noose, which she tied to the upper bunk in her cell, and hung herself. Id. at ¶ 36. Her body was discovered in her cell around 10:00 a.m. on October 11, 2010. Id. at ¶ 37.

At the time the Decedent was evaluated at intake in the LCCF on October 7, 2010, she reported that she was taking methadone and one or more prescribed anti-depressant medications. Id. at ¶¶ 39, 47. She also reported that she was presently in treatment with a mental health professional and methadone maintenance. Id. However, she did not have any medications on her person upon admission to LCCF and no one took any action to obtain the prescribed medications, identify and contact her treating mental health professional or physicians, or review her prior medical history. Id. at ¶¶ 40, 41, 43, 52, 53. When she was evaluated by LCCF employees, she was visibly experiencing symptoms of peak withdrawal from the absence of her medications, including methadone, and exhibited inappropriate and disturbing behavior that continued until the time she was removed from 24-hour suicide watch. Id. at ¶ 48. Despite being cleared from 24-hour suicide watch, she was not actually seen by John Doe #2, John Doe #3, or by any other physician or health care professional. Id. at ¶ 42.

### B. Standard of Review

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). A complaint must be dismissed for failure to state a claim if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 556 (2007) (rejecting the traditional 12(b)(6) standard set forth in Conley v. Gibson, 355

U.S. 41, 45-46 (1957)); Ashcroft v. Iqbal, 129 S. Ct.1937, 1949 (May 18, 2009) (citing Twombly, 550 U.S. at 555-57). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556). The Supreme Court further explained:

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

Id. (citing Twombly, 550 U.S. at 556-57).

In Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. Aug. 18, 2009), the United States Court of Appeals for the Third Circuit discussed its decision in Phillips v. County of Allegheny, 515 F.3d 224, 232-33 (3d Cir. 2008) (construing Twombly in a civil rights context), and described how the Rule 12(b)(6) standard had changed in light of Twombly and Iqbal as follows:

> After Iqbal, it is clear that conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S. Ct. at 1949. To prevent dismissal, all civil complaints must now set out "sufficient factual matter" to show that the claim is facially plausible. This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1948. The Supreme Court's ruling in Iqbal emphasizes that a plaintiff must show that the allegations of his or her complaints are plausible. *See* Id. at 1949-50; *see also* Twombly, 505 U.S. at 555, & n. 3.

Fowler, 578 F.3d at 210.

Thereafter, in light of Iqbal, the United States Court of Appeals for the Third Circuit in Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. 2009), set forth the following two-prong test to be applied by the district courts in deciding motions to dismiss for failure to state a claim:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [Iqbal, 129 S. Ct. at 1949]. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." Id. at 1950. In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See* Phillips, 515 F.3d at 234-35. As the Supreme Court instructed in Iqbal, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'- 'that the pleader is entitled to relief.'" Iqbal, 129 S. Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

Fowler, 578 F.3d at 210-11.

In addition to the complaint, courts may consider matters of public record and other matters of which a court may take judicial notice, court orders, and exhibits attached to the complaint when adjudicating a motion to dismiss under Rule 12(b)(6). Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994) (citing 5A Wright and Miller, *Federal Practice and Procedure: Civil 2d,* § 1357; Chester County Intermediate Unit v. Pennsylvania Blue Shield, 896 F.2d 808, 812 (3d Cir. 1990)). A court may also consider indisputably authentic documents. Spruill v. Gillis, 372 F.3d 218, 223 (3d Cir. 2004); Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993); Golden v. Cook, 293 F. Supp.2d 546, 551 (W.D. Pa. 2003) ("[C]ourts are permitted to consider matters of which they may take judicial notice, including records and reports of administrative bodies, and publically available records and transcripts from judicial proceedings 'in related or underlying cases which have a direct relation to the matters at issue.'") (citations omitted).

### C. Discussion

*1. The County Defendants immunity from Plaintiffs' state tort claims.*

The County Defendants argue that they are immune from Plaintiffs' state tort claims pursuant to the Political Subdivision Tort Claims Act ("PSTCA"), 42 Pa. C.S. § 8541, *et seq.*, which provides as follows:

> Except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person.

42 Pa. C.S. § 8541. The PSTCA provides for eight exceptions to this immunity, but none of which are applicable here. *See* 42 Pa. C.S. § 8542(1)(8).

Pursuant to the act a "local agency" is defined to include "[a] government unit other than the Commonwealth government," 42 Pa. C.S. § 8501, and an employee of a local agency acting within the scope of his duties enjoys the same immunity as the local agency, 42 Pa. C.S. § 8545. However, an employee may be stripped of his immunity when he engages in conduct that is found to constitute "actual malice or willful misconduct" that caused the injury in question. 42 Pa. C.S. § 8550. In other words, the PSTCA extends immunity to negligent acts by employees, except those falling into any one of the eight proscribed exceptions noted in the act, but abrogates immunity for individual employees engaged in actual malice and willful misconduct that caused the plaintiff's injury. While there is statutory abrogation of immunity of individual employees for such conduct, it does not remove the immunity of the local agency. 42 Pa. C.S. § 8550. Therefore, Plaintiffs' wrongful death and survival claims against Lawrence County (Counts 7 and 8) must be dismissed.

Plaintiffs argue that immunity should not extend to John Doe #1 or Warden Covert because the Complaint alleges intentional acts committed by these Defendants that constitute willful misconduct and/or actual malice and that caused the Decedents' death. First, although it

appears that counsel for the County Defendants argues on behalf of John Doe #1 in her brief in support of the partial motion to dismiss, the undersigned notes that the motion was not filed on his behalf nor has counsel entered an appearance for him. Therefore, counsel's arguments with respect to this defendant will not be addressed herein except where otherwise noted. Second, Warden Covert is sued only in his official capacity and the claims against him are treated as claims against Lawrence County. *See*, *infra*, section C(3) of Report. For this reason alone, the claims against Warden Covert acting in his official capacity are barred by the doctrine of sovereign immunity. To the extent Plaintiffs seek abrogation of this immunity for Warden Covert's observation and knowledge of alleged acts committed by jail employees that reflect actual malice and willful misconduct, the result does not change because, once again, he is sued only in his official capacity. Therefore, the wrongful death and survival action claims should be dismissed against him as well.

   2. *Plaintiffs standing to sue in their individual capacities.*

The Complaint states that "Plaintiffs Rogan and Raisley bring this action in their own right, and on behalf of the Estate of Kathleen Ann Rogan, deceased, and on behalf of the Two (2) minor children of decedent, namely; Morgan S. Duffy and Taylor Raisley." (ECF No. 1 at § 8.) Defendants claim that Plaintiffs Rogan and Raisley lack standing to bring these claims "in their own right."

   a. *Civil Rights Claims*

With respect to Plaintiffs' civil rights claims asserted by Plaintiff Rogan personally, the Third Circuit has made clear that "the fundamental guarantees of the Due Process Clause do not extend to a parent's interest in the companionship of his [or her] independent adult child." McCurdy v. Dodd, 352 F.3d 820, 830 (3d Cir. 2003); *see also* Miller v. C.M.S. Corr. Med. Serv.,

No. 08-3014, 2010 U.S. Dist. LEXIS 24156, at *6-7 (D. N.J. Mar. 16, 2010). Plaintiff Rogan is alleged to be the mother of the Decedent, who was an adult individual. Thus, Plaintiff Rogan does not have standing to bring a civil rights claim in her sole capacity as the mother of the Decedent because any attempt to recover damages for the loss of such companionship is not constitutionally permissible. Plaintiff Raisley, who is alleged to simply be the unmarried father of one of the Decedents' children, suffers the same fate. *See* McGowan v. Maryland, 366 U.S. 420, 429 (1961) (litigant may only assert violations of his own constitutional rights); Lee v. Hardin, 2012 U.S. Dist. LEXIS 63471, at *3 n.2 (M.D. Ala. Feb. 17, 2012) (plaintiff lacked standing to sue for the violations of the constitutional rights of his girlfriend). Moreover, even if Raisley had been married to the Decedent, it is well established that a spouse has no standing to assert Section 1983 claims based on violations of the other spouse's civil rights. Pahle v. Colebrookdale Twp., 227 F. Supp. 2d 361, 381 (E.D. Pa. 2002); *see also* Soder v. Chenot, 2007 U.S. Dist. LEXIS 93657, 2007 WL 4556670, at *3 (M.D. Pa. Dec. 20, 2007) (citations omitted); *accord* Hogan v. City of Easton, 2004 U.S. Dist. LEXIS 16189, 2004 WL 1836992, at *6 (E.D. Pa. Aug. 17, 2004 (collecting cases). For these reasons, the undersigned finds that Plaintiffs lack standing to sue in their own right for any of the alleged civil rights violations and these claims must be brought only on behalf of the Decedent's estate.

    *b. State Law Claims*

The purpose of the Wrongful Death Act is to compensate certain enumerated individuals of the deceased for the pecuniary loss occasioned to them through deprivation of the part of the earnings of the deceased that they would have received had he or she lived. Under Pennsylvania's wrongful death statute, 42 Pa. C.S. § 8301, an action may be brought for the benefit of the spouse, children or parents of the deceased to recover damages for the death of an

individual caused by the wrongful act or negligence of another. Id. § 8301(a)-(b). However, according to Pennsylvania's Rules of Civil Procedure all such claims "shall be brought only by the personal representative[1] of the decedent for the benefit of those persons entitled by law to recover damages for such wrongful death" but "[i]f no such action for wrongful death has been brought within six months after the death of the decedent, the action may be brought by the personal representative or by any person entitled by law to recover damages in such action, as trustee ad litem on behalf of all persons entitled to share in the damages." Pa. R. Civ. P. 2202(a)-(b). Pursuant to 42 Pa. C.S. § 8301(b), the beneficiaries to such action "shall exist only for the benefit of the spouse, children or parents of the deceased" even though it is brought for them by the personal representative. See Funk v. Buckley & Co., 45 A.2d 918, 921 (Pa. Super. Ct. 1946). As such, a wrongful death action does not compensate the decedent's estate.

Neither Plaintiff Rogan nor Plaintiff Raisley have standing to bring a wrongful death action in their own right. Rather, they are only permitted to bring such claim as co-administrators on behalf the Decedent's estate for the benefit of Decedent's spouse, children or parents, which would include both Plaintiff Rogan and the Decedent's two minor children. Plaintiff Raisley argues that he is permitted to bring this cause of action in his own right on behalf of his minor daughter. However, the law to which he points in support does not stand for this proposition. Rather, the law states that his daughter would be able to **recover** damages for such action as an enumerated beneficiary of the Decedent. See 42 Pa. C.S. § 8301(b); Rettger v. UPMC Shadyside, 991 A.2d 915, 932-33 (Pa. Sup. Ct. 2010).[2] For these reasons, both Plaintiffs

---

[1] In Pennsylvania, the term "personal representative" is defined as "the executor or administrator of the estate of a decedent duly qualified by law to bring actions within this Commonwealth." Pa. R. Civ. P. 2201.
[2] Plaintiff Raisley also cites to Pa. R. Civ. P. 2228 to support his position. However, this Rule is inapplicable to this case because the injury here did result in death and was not inflicted upon Plaintiff Raisley's daughter.

lack standing to bring their wrongful death action in their own right and Plaintiff Raisley also lacks standing to bring the action in his own right on behalf of his minor child.

Similarly, Plaintiffs do not have standing in their own right to bring a survival action. Pursuant to the Survival Act, "[a]ll causes of action or proceedings, real or personal, survive the death of the plaintiff or of the defendant, or the death of one or more joint plaintiffs or defendants." 42 Pa. C.S. § 8302. A survival action is the personal injury action, brought by the decedent's estate in the person of its executor or administrator, which would have been brought by the decedent had he or she lived. "[A]ll actions that survive a decedent must be brought by or against the personal representative of the decedent's estate." Prevish v. Northwest Medical Ctr., 692 A.2d 192, 200 (Pa. Supr. Ct. 1997); *see also* Funk, 45 A.2d at 921 (Personal representative bring a survival action on behalf of the estate and the proceeds of the recovery belong to the estate.); 20 Pa. C.S. § 3373 ("An action or proceeding to enforce any right or liability which survives a decedent may be brought by or against his personal representative alone or with other parties as though the decedent were alive.") Proceeds recovered belong to the estate and are available to pay the decedent's debts and distributed to heirs, legatees or distributees as general assets of the estate. Funk, 45 A.2d at 921. As such, both Plaintiffs lack standing to bring this action in their own right.

3. *Plaintiffs' claims against Warden Covert in his official capacity.*

As noted *supra*, Plaintiffs have sued Warden Covert only in his official capacity. Defendants move to dismiss him from this case because the claims against him are duplicative of the claims against Lawrence County but Plaintiffs' contend that they are not.

The United States Supreme Court has held that suing a party in his or her official capacity is not a suit against the official but rather is a suit against the official's office. Kentucky v.

11

Graham, 473 U.S. 159, 165 (1985). As such, it is no different from a suit against the entity itself. Graham, 473 U.S. at 166; Will v. Michigan Department of State Police, 491 U.S. 58, 71 (1989). Under section 1983, a local government is subject to liability "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" complained of by the plaintiff. Monell v. Dept. of Soc. Servs. of City of New York, 426 U.S. 658, 694 (1978). The "official policy" requirement distinguishes acts of the municipality from acts of employees of the municipality, thereby limiting liability to action for which the municipality is actually responsible. Id.

As an initial matter, the only claims against Warden Covert are for wrongful death (Count 7) and survival (Count 8) under Pennsylvania state law, for which Plaintiffs have sued all named defendants. It is worth noting that in Plaintiffs civil rights causes of action they have sued Lawrence County and not Warden Covert. Therefore, it appears that Plaintiffs are indeed aware that claims against an employee acting in his official capacity are treated as claims against the agency they represent. Because Plaintiffs have sued Warden Covert only in his official capacity, the two claims against him are really claims against Lawrence County, and pursuant to the PSTCA, Warden Covert is entitled to immunity for these state law claims. *See*, *supra*, C(1) of this Report. As such, the undersigned recommends the dismissal of these two claims against Warden Covert.

   4. *Plaintiffs' state-created danger claim against Lawrence County.*

As an independent basis for liability apart from Plaintiffs' Fourteenth Amendment substantive due process claim found in Counts 1 and 2, Plaintiffs assert a Fourteenth Amendment substantive due process claim based on a state-created danger theory of liability. Specifically, Plaintiffs allege that during the Halloween season in 2010, subsequent to the Decedent's suicide,

unidentified correctional employees made copies of the Decedent's intake photograph and used the photos as faces on several "ghost decorations" in the booking area of the LCCF. (ECF No. 1 at ¶ 96.) These decorations remained at the facility for a number of days during October 2010 where they were visible to employees, officers, and prisoners. Id. at ¶¶ 97-98. Plaintiffs contend that the decorations were "intended to express their open disregard for the rights of inmates, who have needs and impairments such as [the Decedent]" Id. at ¶ 98, and that this conduct manifested the deliberate indifference of the County employees that caused the Decedent's death (ECF No. 21 at 7). Plaintiffs also contend that Lawrence County elected officials in charge of the facility failed to investigate the improper use of the photos and discipline their employees. (ECF No. 1 at ¶ 99.)

The Due Process Clause does not impose an affirmative obligation on the state to protect its citizens from the acts of private persons, or other mishaps not attributable to the conduct of its employees. *See* DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 195-96 (1989); Nicini v. Morra, 212 F.3d 798, 806 (3d Cir. 2000). However, there are two recognized exceptions to this general rule. The first is where there is a "special relationship" between the state and the plaintiff, *see infra* Section C(5) of this Report, and the second exception is where the danger faced by the plaintiff is state-created.

In DeShaney, the United States Supreme Court rejected the claim of a boy and his mother that local officials, who had repeatedly attempted to ensure the boy's safety from his abusive father, were liable under the "special relationship" theory when the boy remained in his father's custody and was so badly beaten that the boy suffered severe brain damage. DeShaney, 289 U.S. at 195-96. In rejecting plaintiffs' claim pursuant to the "special relationship" theory, the Court stated that "when the State takes a person into its custody and holds him there against his will,

the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." Id. at 199-200. As an example, the Court explained that the Eighth Amendment's prohibition against cruel and unusual punishment requires the state "to provide adequate medical care to incarcerated prisoners" and the substantive due process clause "requires the State to provide involuntarily committed mental patients with such services as are necessary to ensure their 'reasonable safety' from themselves and others." Id. at 198-99 (citing Estelle v. Gamble, 429 U.S. 97 (1976) and Youngberg v. Romeo, 457 U.S. 307 (1982)). The Court went on to state:

> The rationale for this principle is simple enough: when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs - - e.g., food, clothing, shelter, medical care, and reasonable safety - - it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause. The affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf. In the substantive due process analysis, it is the State's affirmative act of restraining the individual's freedom to act on his own behalf - - through incarceration, institutionalization, or other similar restraint of personal liberty - - which is the "deprivation of liberty" triggering the protections of the Due Process Clause, not its failure to act to protect his liberty interests against harms inflicted by other means.

DeShaney, 489 U.S. at 200 (citations, quotations and footnote omitted). The Court continued its analysis with the following dicta that provided the foundation for the "state-created danger" theory of liability:

> While the State may have been aware of the dangers Joshua faced in the free world, it played no part in their creation, nor did it do anything to render him any more vulnerable to them. That the State once took temporary custody of Joshua does not alter the analysis, for when it returned him to his father's custody, it placed him in no worse position than that in which he would have been had it not acted at all; the State does not become the permanent guarantor of any individual's safety by having once offered him shelter. Under these circumstances, the State had no constitutional duty to protect Joshua.

Id. at 201.  The Court emphasized that the substantive component of the Due Process Clause is "a limitation on the State's power to act, not . . . a guarantee of certain minimal levels of safety and security."  Id. at 195.  The Court continued that historically, the purpose of substantive due process "was to protect the people from the State, not to ensure that the State protected them from each other."  Id. at 196.

In Kneipp by Cusack v. Tedder, 95 F.3d 1199 (3d Cir. 1996), the United States Court of Appeals for the Third Circuit relied on the language in DeShaney to recognize that a plaintiff alleging a substantive due process violation pursuant to 42 U.S.C. § 1983 could proceed in accordance with a "state-created danger" theory where a state does play a part in the creation of the dangers faced by a private person, or where through its actions, the state renders the individual more vulnerable to them.  Kneipp, 95 F.3d at 1205, 1211.  The state-created danger theory requires a plaintiff to show:

> (1) the harm ultimately caused [to the plaintiff] was foreseeable and fairly direct;
>
> (2) a state-actor acted with a degree of culpability that shocks the conscience;
>
> (3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and
>
> (4) a state-actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

Bright v. Westmoreland County, 443 F.3d 276, 281 (3d Cir. 2006) (quotations and footnotes omitted)).

What is fatal to Plaintiffs' state-created danger claim is that at the time the employees used her photo as faces for their ghost decorations, the Decedent had already passed. With regard to the fourth element of a state-created danger claim, the Third Circuit has stated:

> "Liability . . . is predicated upon the states' *affirmative acts* which work to the plaintiff's detriment in terms of exposure to danger. It is the *misuse of state authority, rather than a failure to use it,* that can violate the Due Process Clause."

Phillips, 515 F.3d at 235 (quoting Bright, 443 F.3d at 282) (other citation omitted) (emphasis added by Phillips court). Even assuming Plaintiffs allegations to be true, the employees' conduct, while reprehensible and disturbing, did not create a danger to the Decedent or render her more vulnerable to it. Simply put, no harm came to the Decedent as a result of the ghost decorations because all harm seized upon her death. This claim should be dismissed against both Lawrence County and John Doe #1 accordingly.[3]

5. *The applicability of the special relationship theory.*

As an additional independent basis of liability, Plaintiffs assert a Fourteenth Amendment substantive due process claim against Lawrence County arising out of the breach of its "special relationship" with the Decedent. Specifically, the County violated its affirmative duty to protect the Decedent's safety and well-being while in its custody. Defendants argue that no special relationship existed and the theory is unnecessary to this case.

The undersigned disagrees with Defendants' argument that there was no "special relationship" between Lawrence County and the Decedent in this case. The special relationship doctrine stems directly from DeShaney itself, and applies in situations where the state imposes

---

[3] To the extent Plaintiff argues that the ghost decorations manifested the County employees' deliberate indifference to the Decedent at the time when she was alive and that such deliberate indifference caused the Decedent's death, this may be evidence of Plaintiffs' deliberate indifference claim against Lawrence County in Count 2 but does not support their state-created danger claim because the misconduct alleged here is specifically in regards to the Decedents' image on the ghost decorations and not any affirmative act that occurred prior to her death.

limitations upon an individual's freedom to act on his or her own behalf. *See*, *supra*, Section C(5) of this Report. As noted in DeShaney, [it is] when the State takes a person into its custody and holds him there against his will, [that] the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being. DeShaney, 489 U.S. at 199-200 (citations omitted). Pursuant to this standard, it is when the state deprives an individual of liberty that triggers an affirmative duty to provide protection to that individual which creates a special relationship. A pretrial detention forms such a relationship. *See* Collins v. City of Harker Heights, 503 U.S. 115, 127-28 (1992).

However, the undersigned agrees with Defendants, although for different reasons, that such theory of liability is unnecessary in this case. With any incarcerated individual, the custody in which the person is held is the means by which liability can be asserted against the state. Without such custody, no liability would attach. However, because the individual is already in custody, there is no need to discuss the issue of a special relationship. Here, there is no dispute that the Decedent was a pre-trial detainee at the LCCF at the time the violations are alleged to have occurred and no dispute that Plaintiffs have also brought a Fourteenth Amendment deliberate indifference claim against Lawrence County in Count 2. Thus, Plaintiffs' claim premised on a "special relationship" with the county is superfluous and should be dismissed. The same is also true with respect to John Doe #1.

6. *Immunity from punitive damages.*

According to the Complaint, Plaintiffs seek punitive damages against all Defendants. Defendants Lawrence County and Warden Covert argue that punitive damages may not be imposed against the County or the Warden because he is sued only in his official capacity. See City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981) (Punitive damages not

available against municipalities under 42 U.S.C. § 1983). Plaintiffs admit that punitive damages may not be assessed against the County or the Warden, since he has not been sued in his own right. As such, Plaintiffs' claim for punitive damages should be dismissed as to Lawrence County and Warden Covert in his official capacity. Plaintiffs maintain, however, that John Doe #1 is not immune from punitive damages because he is being sued in his own right. As noted *supra*, in section C(1) of this Report, the undersigned will refrain from addressing this issue as it relates to John Doe #1.

### III. CONCLUSION

For the reasons set forth above, it is respectfully recommended that the Partial Motion to Dismiss filed by Lawrence County and Warden Covert (ECF No. 10) be granted in part and denied without prejudice in part as follows:

(1) Granted as to Plaintiffs' wrongful death (Count 7) and survival (Count 8) claims against Lawrence County and Warden Covert in his official capacity.

(2) Granted as to all Counts against all Defendants to the extent Plaintiffs bring suit in their own right and also granted as to Plaintiff Raisley's wrongful death claim asserted on behalf of his minor child.

(3) Granted as to Plaintiffs' claims against Warden Covert (Counts 7 and 8) in his official capacity as being duplicative of the claims against Lawrence County.

(4) Granted as to Plaintiffs' state-created danger claim against John Doe #1 (Count 3) and Lawrence County (Count 4)

(5) Granted as to Plaintiffs' "special relationship" claim against John Doe #1 and Lawrence County (Count 5).

(6) Granted as to Plaintiffs' claim for punitive damages against Lawrence County and Warden Covert in his official capacity.

(7) Denied without prejudice as to Plaintiffs' remaining claims asserted against John Doe #1 (Counts 1, 7 and 8).

It is further recommended that Defendant Warden Covert be terminated from this action as there are no remaining Counts against him.

In accordance with the applicable provisions of the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B)&(C), and Rule 72.D.2 of the Local Rules of Court, the parties shall have fourteen (14) days from the date of the service of this report and recommendation to file written objections thereto. Any party opposing such objections shall have fourteen (14) days from the date on which the objections are served to file its response. A party's failure to file timely objections will constitute a waiver of that party's appellate rights.

Dated: June 5, 2013

_____
Lisa Pupo Lenihan
Chief United States Magistrate Judge

cc: Counsel of Record
 *Via ECF Electronic Mail*